UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES G. BRUCE,

        Plaintiff,                                      Civil No. 04-6387-HA

        v.                                             OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
_____

Kathryn Tassinari
Drew L. Johnson P.C.
1700 Valley River Drive, First Floor
Eugene, Oregon 97401
        Attorneys for Plaintiff

Karin J. Immergut

1 -- OPINION AND ORDER

United States Attorney
Craig J. Casey
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

David J. Burdett
Special Assistant United States Attorney
Lucille G. Meis
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, Washington 98104-7075
    Attorneys for Defendant

HAGGERTY, Chief Judge:

Plaintiff brings this action pursuant to § 205(g) of the Social Security Act (SSA), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3). He seeks judicial review of the final decision of the Commissioner of the Social Security Administration partially denying his application for disability insurance benefits (DIB) under Title II. The Commissioner concluded that plaintiff was entitled to DIB calculated to commence on May 28, 2001. Plaintiff contends that the Commissioner erred in failing to commence his DIB on February 4, 2000. For the reasons provided below, the court concludes that the decision of the Commissioner must be affirmed.

ADMINISTRATIVE HISTORY

Plaintiff filed for DIB on February 7, 2000, alleging disability beginning February 4, 2000. *See* Administrative Record 107 (all remaining references to the Administrative Record will be designated by "AR" followed by the page number). After plaintiff's claim was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ),

the Appeals Council remanded the case for additional consideration. After this subsequent consideration, the ALJ concluded that plaintiff was entitled to DIB commencing on May 28, 2001. Plaintiff filed this Complaint seeking judicial review of this result, arguing that his DIB should be calculated as commencing on February 4, 2000.

ANALYSIS

In light of defendant's stipulation to plaintiff's recitation of the facts of this case, and defendant's acknowledgment that plaintiff's entitlement to DIB commencing *at least* from the date of May 28, 2001, is secure regardless of the resolution of this action, this court is free to proceed directly to an analysis of the questions presented. In sum, plaintiff asserts that his DIB should be calculated from February 4, 2000, instead of from May 28, 2001, because the ALJ erred in failing to identify legally sufficient reasons for failing to credit (1) the opinions of Dr. Timothy Hill, the examining rehabilitation specialist; Dr. Arthur Edelman, the examining psychologist; Dr. Indulal Rughani, the treating physician; and (2) the testimony of plaintiff. *See generally*, Pl. Reply, pp. 1-3.

1. Medical Opinions

The court concludes that the ALJ did not err in weighing the opinions of Drs. Hill, Edelman, and Rughani. While clear and convincing reasons are required to reject an examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based

on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff first contends that the ALJ erred in rejecting Dr. Hill's opinion that it would be "unreasonable" to expect plaintiff to complete a full workday if burdened with the amount of respiratory and physical distress revealed in Dr. Hill's evaluation of a physical capacity evaluation of plaintiff that was performed in August 2000. AR at 579. At issue here is whether the ALJ provided adequate reasons for discounting Dr. Hill's interpretation of that assessment.

Plaintiff provides several objective sources that support Dr. Hill's opinion. However, the question presented is not whether Dr. Hill's interpretation of the evidence is supported by substantial evidence, but whether the ALJ's conclusions are, and whether the ALJ weighed the medical opinions presented in the record correctly. This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Id*. Substantial evidence is more than a mere scintilla, but not necessarily a preponderance, of evidence. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). This court will not substitute its judgment for that of the ALJ, and if the evidence can support either outcome, the court is compelled to uphold the ALJ's decision. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Stated differently, this court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational

interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ's findings referred to the physical capacity evaluation performed on August 23, 2000, that indicated plaintiff could lift and carry up to fifty pounds. AR at 29-30. The ALJ explicitly adopted this assessment:

> The undersigned accepts the physical capacity evaluation of the claimant in August 2000. The report notes that Mr. Bruce demonstrates the ability to work full-time in the medium/light range of physical demand. Specifically, he demonstrated/was assessed as being able to do medium to light exertion with standing, walking and sitting each for one and one-half hour[s] without interruption, for a total of six to seven hours; lifting and carrying occasionally of 50 to 38 pounds and frequently of 40 to 25 pounds. Reaching, bending, squatting, kneeling and stair climbing were limited to occasional. Handgrip, strength, and rapid exchange were normal. (Exhibit 13F at 18-19).

AR at 29.

In accordance with accepting this evaluation, the ALJ concluded that plaintiff retained the residual functional capacity to perform work at a wide range of medium exertion prior to May 28, 2001. AR at 30. The ALJ examined the two-hour physical assessment in detail, and noted that the physical therapist who administered it cited "direct observation" and "objective reliability measurements" as indicating that the evaluation results were valid and were an accurate representation of plaintiff's capacities. *Id*. (citation omitted). The ALJ then concluded that because of plaintiff's "emerging cadiovascular condition," plaintiff was disabled after May 28. 2001. *Id*.

The reasons the ALJ relied upon for discounting Dr. Hill's interpretation of the physical assessment – including the results of the assessment itself and the interpretation of the therapist

who administered it – were legally sufficient. Plaintiff's presentation of evidence tending to support Dr. Hill's interpretation fails to preclude this conclusion.

Plaintiff next complains that the ALJ improperly rejected the opinion of Dr. Edelman, the examining psychologist. Doctor Edelman joined with Dr. Hill in opining that plaintiff was fully disabled in 2000. The ALJ relied upon plaintiff's "full lifestyle and unremarkable objective findings of record," and the lack of any findings by Dr. Edelman regarding memory, thought, logic, or significant limitations other than avoiding situations that might increase his anxiety, as grounds for discounting Dr. Edelman's opinion.

Plaintiff argues that the ALJ ignored Dr. Edelman's reliance upon the doctor's testing, which led to a diagnosis that plaintiff suffered from "an underlying anxiety disorder." AR at 220-21. Plaintiff also emphasizes that Dr. Edelman's finding that plaintiff tends to somaticize, or involuntarily exaggerate his symptoms, should be construed as further supporting Dr. Edelman's conclusion that plaintiff was disabled in 2000. Pl.s Memo. at 25.

The existence of a somatoform disorder casts doubt upon plaintiff's self-reporting. By itself, however, the disorder neither strongly supports or strongly detracts from the question of plaintiff's eligibility for DIB prior to May 28, 2002, or whether the ALJ's reasons for rejecting Dr. Edelman's opinion were legally sufficient. The presence of that disorder is valid, however, as one of several reasons proffered by the ALJ for that rejection. The ALJ acknowledged, tacitly, that Dr. Edelman's testing led the doctor to conclude that plaintiff suffers from anxiety. AR at 29. The ALJ's reasons for discounting the opinion that plaintiff's "psychological make-up" rendered him totally disabled in 2000, however, are sufficient, and fairly derived from the

evidence in the record. The ALJ adequately relied upon evidence of plaintiff's full lifestyle and the lack of additional psychological limitations in evaluating Dr. Edelman's opinion.

Plaintiff also challenges the ALJ's rejection of the opinion of Dr. Rughani, plaintiff's treating physician. The ALJ provided explicit reasons for this: the opinions appeared "to be based only on the claimant's and his wife's subjective complaints," and there was "an absolute absence of objective support for his conclusions and his statements are in conflict with his own treatment records that fail to document significant problems." AR at 28. The ALJ also noted that the doctor had failed to conduct "any extensive examination" of plaintiff, and that his "notes of actual observations are generally benign." *Id*.

Plaintiff argues that this rejection was improper by raising issues regarding plaintiff's complaints regarding exposure to fumes at work, and conflicting evidence regarding plaintiff possibly suffering from some degree of fibromyalgia and tremors. These arguments are unpersuasive and the court concludes that the ALJ's reasons for rejecting Dr. Rughani's opinion were sound and legally sufficient.

2. Plaintiff's Testimony

Plaintiff next complains that the ALJ erred by rejecting his testimony that his impairments were disabling. Once a claimant produces medical evidence of an underlying impairment, as here, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because the testimony is unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*.

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony. This court disagrees.

Factors considered when evaluating a plaintiff's credibility include the claimant's daily activities, the duration, frequency, and intensity of the claimant's symptoms, circumstances that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant may have taken to alleviate symptoms, and treatment other than medication the claimant receives or has received. S.S.R. 96-7p. The ALJ may also consider inferences drawn from the medical evidence, the consistency of a claimant's statements, both internally and with other evidence in the record, and any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ made numerous and specific references to the relevant factors set forth in S.S.R. 96-7p and *Smolen*. The ALJ discussed the discrepancy between plaintiff's testimony and other evidence in the record regarding the starting date of his eligibility for DIB. Specifically, the ALJ reviewed the extent of plaintiff's active lifestyle, as well as the "generally unremarkable" medical evidence prior to May, 28, 2001. The ALJ set forth all of these observations in the decision. AR at 26-30. These observations were sufficiently specific to demonstrate that the ALJ did not arbitrarily discredit plaintiff's testimony. *Thomas*, 278 F.3d at 958. The ALJ did not err in discounting plaintiff's credibility.

CONCLUSION

For the foregoing reasons, this court concludes that the Commissioner's decision is based on correct legal standards and is supported by substantial evidence in the record. The Commissioner's denial of plaintiff Charles G. Bruce's application for DIB commencing on February 4, 2000 (but instead commencing on May 28, 2001), therefore, is AFFIRMED. This matter is DISMISSED.

IT IS SO ORDERED.

DATED this 23\_\_\_\_\_ day of November, 2005.


_____/s/Ancer L.Haggerty_____
Ancer L. Haggerty
United States District Judge